IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WWINNERS CONTAINER SERVICES, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-09-1756 |
| CMA CGM (AMERICA) LLC, | § § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, WWinners Container Services, Inc., brings this action against the defendant, CMA CGM (America) LLC ("CCA"), for breach of contract to pay storage fees.  Pending before the court are Defendant's Motion for Summary Judgment (Docket Entry No. 12), and Plaintiff WWinners Container Services, Inc.'s Counter Motion for Summary Judgment (Docket Entry No. 21).  For the reasons explained below, the defendant's motion will be denied, and the plaintiff's motion will be granted.

## I.  Procedural Background

CCA filed its pending motion for summary judgment on December 2, 2009.  Over twenty days later, on February 23, 2010, WWinners filed its response to CCA's motion and a counter motion for summary judgment.  On March 16, 2010, CCA filed Defendant's Response to Plaintiff's Counter Motion for Summary Judgment and

Supplemental Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment (Docket Entry No. 24). Citing Local Rule 7.3, CCA argues that "WWinners' late-filed purported Response should be stricken,"[1] and that "WWinners' utter failure to timely respond to CCA's Motion for Summary Judgment establishes a lack of opposition."[2] On the same day, March 16, 2010, WWinners filed Plaintiff's Reply to Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment (Docket Entry No. 25). Therein WWinners "requests permission to file its Response to Defendant's Motion for Summary Judgment."[3] WWinners explains that

> the bar date for dispositive motions as set out in this Court's Docket Control Order is March 19, 2010, which date has not yet arrived. Plaintiff has filed its own Motion for Summary Judgment within the Docket Control Order's time frame for such. Contained within Plaintiff's motion is a response to Defendant's Motion For Summary Judgment. Certainly a motion for summary judgment, by its very nature, is a response to a motion for summary judgment previously filed by the other party. Since the Court had not yet ruled upon the first-filed motion for summary judgment, a response filed prior to such [a] ruling should not be lightly discarded.[4]

Local Rule 7.3 provides that "Opposed motions will be submitted to the judge twenty days from filing without notice from

---

[1]Defendant's Response to Plaintiff's Counter Motion for Summary Judgment and Supplemental Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment (CCA's Response and Reply), Docket Entry No. 24, p. 2 & n.2.

[2]Id. at 4 & n.12.

[3]Plaintiff's Reply to Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment, Docket Entry No. 25, p. 1.

[4]Id. at 1-2.

-2-

the clerk and without appearance by counsel." S.D. Tex. R. 7.3
(2000).  Local Rule 7.4 provides:

> Failure to respond will be taken as a representation of
> no opposition.  Responses to motions
>
> A.   Must be filed by the submission day;
> B.   Must be written;
> C.   Must include or be accompanied by authority; and
> D.   Must be accompanied by a separate form order
>      denying the relief sought.

S.D. Tex. R. 7.4 (2000).  Even if the court were to accept CCA's
contention that WWinners' response to CCA's motion for summary
judgment should be stricken, the court could not grant CCA summary
judgment by default simply because there is no opposition to its
motion.  The court may accept as undisputed the movant's version of
the facts and grant a motion for summary judgment only when the
movant has made a _prima facie_ showing of entitlement to summary
judgment.  _See_ _John v. State of Louisiana (Board of Trustees for_
_the State Colleges and Universities)_, 757 F.2d 698, 708 (5th Cir.
1985) (when the movant's summary judgment evidence establishes its
right to judgment as a matter of law, the district court is
entitled to grant summary judgment absent unusual circumstances);
and _Eversley v. Mbank Dallas_, 843 F.2d 172, 174 (5th Cir. 1988)
(when the nonmovant fails to respond to a motion for summary
judgment, the court does not err by granting the motion when the
movant's submittals make a _prima facie_ showing of entitlement to
judgment as a matter of law).  Because the Docket Control Order
entered in this case established March 19, 2010, as the last date

-3-

for filing a dispositive motion,[5] because WWinners filed its motion for summary judgment before that date, and because WWinners' motion for summary judgment is also its response to CCA's motion for summary judgment, the court is not persuaded that WWinners' response to CCA's motion for summary judgment should be stricken.

## II.  **Standard of Review**

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.  Fed. R. Civ. P. 56(c).  Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2511 (1986).  The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  If

---

[5]Docket Entry No. 9.

the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.  Id. (citing Celotex, 106 S.Ct. at 2553-2554).  In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S.Ct. 2097, 2110 (2000). Factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075.

### III.  Undisputed Facts

Undisputed evidence establishes that Hon Hai Precision Industry Co., Ltd. ("Hon Hai") contracted with CMA CGM S.A. to ship containers from China to the United States.  All of the bills of lading in evidence identify CMA CGM S.A. as the carrier, Hon Hai as the shipper and/or merchant, and "Final Place of Delivery" as either "Houston, TX," or "Austin, TX."[6]  The initial voyages were aboard CMA CGM S.A. vessels to Long Beach, California, where the Hon Hai containers were discharged for transport to other locations

---

[6]Bills of Lading, Exhibit A attached to Affidavit of Misty Palmer (Palmer Affidavit), Exhibit 1 attached to Defendant's Motion for Summary Judgment, Docket Entry No. 12.

in the United States via rail and truck.[7]  The carrier, CMA CGM
S.A., was responsible for delivering the Hon Hai containers to
various locations in the United States using W.W. Rowland Trucking
Co., Inc. ("Rowland Trucking"), Hon Hai's preferred trucking
company.[8]  Rowland Trucking and WWinners are both wholly owned
subsidiaries of W.W. Rowland Investment Co., Inc.  Employees of any
one of the three Rowland entities might perform services for any of
the others.[9]

In July of 2008 CCA arranged to have containers shipped by Hon
Hai delivered by Rowland Trucking to WWinners' Houston yard for
storage prior to delivery to Foxconn.[10]  On July 30 and 31, 2008,
CCA had 29 containers delivered to WWinners' Houston yard.  CCA
continued to have containers delivered to WWinners' Houston yard
through April 20, 2009.  During that time WWinners sent no less

---

[7]Palmer Affidavit at ¶ 2, Exhibit 1 attached to Defendant's
Motion for Summary Judgment, Docket Entry No. 12.

[8]Id. ¶ 4.

[9]Affidavit of Hershal Bradley (Bradley Affidavit), Exhibit 3
attached to Plaintiff WWinners Container Services, Inc.'s Response
to Defendant's Motion for Summary Judgment and Plaintiff WWinners
Container Services, Inc.'s Counter Motion for Summary Judgment,
(WWinners' Response and Counter Motion), Docket Entry Nos. 20-21.

[10]E-mail from Tom Pinkava on behalf of CCA to Gary Connor on
behalf of WWinners (explaining that "WW Ro[w]land's will be
hol[d]ing loads at their facility prior to delivery to Foxconn"),
Exhibit A to Affidavit of Bill R. Bludworth (Bludworth Affidavit),
Exhibit 1 attached to WWinners' Response and Counter Motion, Docket
Entry Nos. 20-21.

than 22 invoices to CCA.[11]  On May 1, 2009, WWinners' counsel made a formal demand to CCA for payment of the invoices.[12]  CCA has not paid any of the invoices received from WWinners for container storage at WWinners' Houston yard.[13]

## IV.  <u>Analysis</u>

WWinners seeks payment of outstanding charges for container storage at its Houston yard on two legal theories:  breach of contract and <u>quantum meruit</u>.  CCA argues that it is entitled to summary judgment under both legal theories.  Both parties cite Texas law in support of their respective arguments and therefore agree that Texas law is applicable to WWinners' claims.

### A.    Breach of Contract

#### 1.    <u>Applicable Law</u>

In Texas "the essential elements of a breach of contract claim are:  (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant, and (4) damages sustained by the plaintiff as a

---

[11]Bradley Affidavit, Exhibit 3 attached to WWinners' Response and Counter Motion, Docket Entry Nos. 20-21.

[12]May 1, 2009, letter from Bill R. Bludworth to Jim Arnold, CFO, CMA-CGM, Exhibit C to Bludworth Affidavit, Exhibit 1 attached to WWinner's Response and Counter Motion, Docket Entry Nos. 20-21.

[13]Affidavit of Jane Arbuthnot (Arbuthnot Affidavit), Exhibit 4 attached to WWinners' Response and Counter Motion, Docket Entry Nos. 20-21; Palmer Affidavit at ¶ 3, Exhibit 1 attached to Defendant's Motion for Summary Judgment, Docket Entry No. 12.

result of the breach." <u>Mullins v. TestAmerica, Inc.</u>, 564 F.3d 386, 418 (5th Cir. 2009) (citing <u>Aguiar v. Segal</u>, 167 S.W.3d 443, 450 (Tex. App. -- Houston [14th Dist.] 2005, pet. denied)).

    2.  <u>Application of the Law to the Facts</u>

CCA argues that it is entitled to summary judgment on WWinners' breach of contract claim because "WWinners claims a contract existed obliging CCA to pay for the storage of certain containers at WWinners' Houston facility. No such contract exists between CCA and WWinners."[14] WWinners responds that "[t]he only question which exists is one for the Court to find as a matter of law that a contract existed between WWinners and CCA."[15]

    (a)  Existence of a Valid Contract

The elements of a valid contract are: (1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. <u>Roman v. Roman</u>, 193 S.W.3d 40, 50 (Tex. App. -- Houston [1st Dist.] 2006, pet. denied), <u>cert. denied</u>, 128 S.Ct. 1662 (2008). "Consideration is also a funda-mental element of every valid contract." <u>Id.</u>

---

[14]Defendant's Motion for Summary Judgment, Docket Entry No. 12, p. 1; Palmer Affidavit, Exhibit 1 attached thereto at ¶ 3 ("CCA has never paid any invoices for storage of containers at WWinners' Houston facility, and never agreed to do so in this case").

[15]WWinners' Response and Counter Motion, Docket Entry Nos. 20-21, p. 1.

As evidence that a valid contract for container storage exists between WWinners and CCA, WWinners has submitted copies of e-mail correspondence between representatives of CCA and WWinners, affidavits of Sergio Escobedo, Houston Terminal Manager for Rowland Trucking, Hershal Bradley, Director of Operations for WWinners Construction Services, Inc., and Jane Arbuthnot, Chief Financial Officer for the W.W. Rowland group of companies, and a Statement of Account listing the storage charges that WWinners seeks to recover in this action.

The e-mail correspondence between representatives of WWinners and CCA on which WWinners relies to establish the existence of a valid contract occurred in July and August of 2008.  The July correspondence is dated July 2 and July 28, 2008, and was exchanged between Tom Pinkava and Jeanne Torrell on behalf of CCA and Gary Connor on behalf of WWinners.  The subject line on all of the July correspondence is "Foxconn," and the e-mail was all copied to Hershal Bradley, WWinners' Director of Operations for Container Services, and to Sergio Escobedo, the Houston Terminal Manager for Rowland Trucking.[16]

The only e-mail dated July 2, 2008, is a message from Connor to Pinkava setting out trucking and yard, *i.e.*, storage, charges:

Yard Pull:

BNSF to Yard $100.00
Bayport to Yard $145.00

_____

[16]Exhibit A to Bludworth Affidavit, Exhibit 1 attached to WWinners' Response and Counter Motion, Docket Entry Nos. 20-21.

```
Local Houston Delivery $225.00
Delivery to Austin, TX $633.00

All rates are plus fuel

Yard Charges:

Gate: $9.00 Per TIR
Storage: $25 per day
Free Days: 10 (day of interchange plus 9)

EDI gates are available[17]
```

The first of three July 28, 2008, e-mails was sent at 1:19 PM by Conner to Pinkava asking, "what department do we bill for the gates and storage for Foxconn?  And how do you want it, Weekly or Monthly."[18]  The second July 28, 2008, e-mail was sent at 1:23 PM from Pinkava to Torrell with a copy to Connor stating, "Gary, The CMA CGM staff members in copy are best suited to answer your questions.  WW Ro[w]land's will be hol[d]ing loads at their facility prior to delivery to Foxconn."[19]  The third July 28, 2008, e-mail was sent at 3:27 PM by Torrell to Pinkava with a copy to Conner and others stating, "Gary— We would prefer weekly invoices and they can be mailed to the following address:

```
CMA CGM (America) LLC
5701 Lake Wright Drive
Norfolk, VA 23502
Attn Accounts Payable.[20]
```

---

[17] <u>Id.</u> at 2.

[18] <u>Id.</u>

[19] <u>Id.</u> at 1.

[20] <u>Id.</u>

In his affidavit Sergio Escobedo, Houston Terminal Manager for Rowland Trucking, explains that

> [t]he correspondence in Exhibit 1 A to WWinners Response to Defendants Motion for Summary Judgment and WWinners' Motion for Summary Judgment sets out the trucking charges form the BNSF (Burlington Northern & Santa Fe) rail depot to the WWRTC/WWinners yard. In addition, the correspond-ence sets out the storage rates and the number of free storage days. The July 28, 2008 correspondence goes on to address to whom and where the storage invoices are to be sent as well as how frequently they were to be billed.[21]

The August correspondence is all dated August 4, 2008, and is correspondence that was exchanged between Scott Duggan and Robert Boulter on behalf of CCA, and Gary Connor and Gale Ford on behalf of WWinners. Most of the August 4, 2008, correspondence was copied to Hershal Bradley. The subject line on all of the August correspondence is "WW Rowland Setup," and the e-mail all concerned arrangements for "EDI" (electronic data interchange).

In his affidavit Hershal Bradley, Director of Operations for WWinners Construction Services, Inc., explains that

> WWinners and WWRTC are both wholly owned subsidiaries of W.W. [Rowland] Investment Co., Inc. . . . Employees of any of the three entities might perform services for any of the others. WWinners had no agreement with Hon Hai or Foxconn with regard to storing containers.
>
> In July of 2008, arrangements were made between CMA CGM (America) LLC ("CCA") and WWinners to store the containers in question at WWinners container yard. These arrangements are evidenced by the correspondence between

---

[21]Affidavit of Sergio Escobedo (Escobedo Affidavit), Exhibit 2 attached to WWinners' Response and Cross Motion, Docket Entry Nos. 20-21.

Gary Connor of WWinners and Tom Pinkava and Jeanne
Terrell of CCA and are dated July 2, 2008 and July 28,
2008(3), and are attached as Exhibit 1 A to WWinners
Response to Defendant's Motion for Summary Judgment and
WWinners' Motion for Summary Judgment and sets out the
trucking charges from the BNSF (Burlington Northern &
Santa Fe) rail depot to the WWRTC/WWinners yard.   In
addition, the correspondence sets out the storage rates
and the number of free storage days.   The July 28, 2008
correspondence goes on to address to whom and where the
storage invoices are to be sent as well as how frequently
they were to be billed.

      In addition, there is correspondence dated August 4,
2008 . . . and is attached to WWinners' Motion for
Summary Judgment as Exhibit 1B, pages 1, 2 and 3.   Those
exhibits discuss the set up of the "EDI" (electronic data
interchange) between various CCA employees and various
WWRTC/WWinners employees.   There would be no reason for
this discourse if CCA were not going to be storing their
containers on WWinners' yard.   An "interchange" is a term
used in the shipping industry to document a change of
possession of the cargo.   An interchange can either be
paper or electronic.   In this situation, a cargo being
delivered to a storage yard then later being removed from
the storage yard is done electronically.

      CCA immediately began using WWinners storage
facilities having 29 containers delivered to the yard on
July 30, and July 31, 2008.   Thereafter, CCA continued to
have hundreds of containers delivered to the yard through
April 20, 2009.   During that time frame, WWinners sent no
less than 22 invoices to CCA.   Never once did CCA
question the amount of the charges on the invoices nor
did they question why WWinners was sending the invoices
to CCA.

      The price that CCA agreed to pay for storage was set
out in writing in the July 2, 2008 e-mail and was never
objected to or discussed further.[22]

In her affidavit, Jane Arbuthnot, Chief Financial Officer for

the W.W. Rowland group of companies, states that "WWinners has

---

[22]Bradley Affidavit, Exhibit 3 attached to WWinners' Response
and Cross Motion, Docket Entry Nos. 20-21.

furnished CMA CGM (America) LLC storage services totalling $153,861.00 which have not been paid. Only when WWinners made its demand for payment in May of 2009, did CMA CGM (America) LLC ever claim they did not owe and did not intend to pay the invoices."[23]

WWinners' argues in its counter motion for summary judgment that

> [t]he Documents which create the contract are attached hereto as Exhibits 1 A and 1 B. There was a meeting of the minds that storage was to be provided at WWinners' yard for the CCA Containers in question. The price that CCA was to pay for the storage was stated in writing without objection of further discussion. The name of the party to be billed (CCA) and its address was provided by CCA. Containers were delivered, stored and billed for. If CCA used the WWinners storage yard, the terms and amounts owed were clear. If they did not use the WWinners yard, CCA may have had an unhappy client; but, they did not owe WWinners anything.[24]

CCA does not dispute that the e-mail correspondence that occurred between Connor (on WWinners' behalf) and Pinkava and Torrell (on CCA's behalf), followed by CCA's delivery of containers for storage at WWinners' Houston yard satisfy the elements for the existence of a valid contract because they reflect an offer, an acceptance, a meeting of the minds, and each party's consent to the terms. Nor does CCA dispute that the element of consideration has been satisfied by WWinners' acceptance of the containers that CCA had delivered to its Houston yard and provision of storage for

---

[23]Arbuthnot Affidavit, Exhibit 4 attached to WWinners' Response and Cross Motion, Docket Entry Nos. 20-21.

[24]WWinners' Response and Cross Motion, Docket Entry Nos. 20-21, p. 4.

those containers.  Instead, CCA contends that "[n]o contract for container storage exists between CCA and WWinners [because] CCA, in its role as the agent of the ocean carrier, CMA CGM S.A., served simply as the disclosed agent of a known principal."[25] Alternatively, CCA contends that no contract for container storage exists between CCA and WWinners because "[t]he contracts that govern this dispute are the CMA CGM S.A. bills of lading issued for each shipment of cargo on behalf of Hon Hai and/or Foxconn."[26]

### (1)  CCA as Agent for a Disclosed Principal

CCA contends that it "has no liability to WWinners for the container storage charges at issue"[27] because no contract for container storage exits between it and WWinners.  Citing the affidavit of Misty Palmer, CCA's Manager — Import Premiere/STARS Desk, CCA argues that "pursuant to the parties' course of dealing, CCA merely served as intermediary, forwarding WWinners' container storage invoices to Hon Hai and/or Foxconn for payment."[28]  Citing Seale v. Nichols, 505 S.W.2d 251, 254-55 (Tex. 1974), CCA argues that "[a]n agent cannot be held personally liable for the claims or debts incurred on behalf of a disclosed principal . . . for it is

---

[25]Defendant's Motion for Summary Judgment, Docket Entry No. 12, p. 7.

[26]Id. at 3.

[27]Id. at 7.

[28]Id. at 6-7.

-14-

the principal who enters into the contract."[29]   CCA asserts that "WWinners does not argue to the contrary."[30]   WWinners does not dispute the legal principle on which CCA relies, _i.e._, that "[a]n agent cannot be held personally liable for the claims or debts incurred on behalf of a disclosed principal . . . for it is the principal who enters into the contract,"[31] but does dispute CCA's contention that it is not bound to pay for storage services because no valid contract exists between it and WWinners.

Under Texas law "[i]t is well established that an agent acting for a disclosed principal is not liable for claims arising out of contracts executed by the agent on behalf of its principal." Instone Travel Tech Marine & Offshore v. International Shipping Partners, Inc., 334 F.3d 423, 428 (5th Cir. 2003).  See also Seale, 505 S.W.2d at 254-55.  But it is also well established that the law does not presume agency.  Thus, to avoid liability an agent bears the burden of proving that it disclosed to the party with whom it was contracting (1) that it was acting in a representative capacity and (2) the identity of the principal for whom it was acting. Di Giammatteo v. Olney, 794 S.W.2d 103, 104 (Tex. App. -- Dallas 1990, no writ).  The issue of disclosure is a question of fact. Lacquement v. Handy, 876 S.W.2d 932, 939 (Tex. App. -- Fort Worth

---

[29]Id. at 7.

[30]CCA's Response and Reply, Docket Entry No. 24, p. 4.

[31]Defendant's Motion for Summary Judgment, Docket Entry No. 12, p. 7.

1994, no writ).  "When determining whether an agent has properly
disclosed his principal, [the court] must look at the time the
contract was entered into."  Id. at 940.  Moreover, the general
rule that an agent acting for a disclosed principal is not liable
for claims arising out of contracts executed by the agent on behalf
of its principal may be overcome "when the agent expressly or
implicitly accepts liability."  Instone, 334 F.3d at 431.

CCA's reliance on Palmer's affidavit in support of its
contention that it dealt with WWinners merely as an agent acting on
behalf of a disclosed principal is misplaced because Palmer states
only that "CCA, in its role as agent for CMA CGM S.A., ocean
carrier, served simply as the disclosed agent of the shipper Hon
Hai and/or Foxconn, a known principal to WWinners at all times
relevant to this suit."[32]  This statement in Palmer's affidavit is
not evidence that CCA acted only as an agent of a disclosed
principal, but merely a statement of the legal conclusion that CCA
asks the court to draw.  Missing from the summary judgment record
is any evidence showing that CCA revealed to WWinners that it was
acting in a representative capacity and/or the identity of the
third party with whom CCA contends WWinners was contracting for
storage.  Also missing from the summary judgment record is any
evidence in support of CCA's assertion that "pursuant to the
parties' course of dealing, CCA merely served as intermediary,

---

[32]Palmer Affidavit at ¶ 5, Exhibit 1 attached to Defendant's
Motion for Summary Judgment, Docket Entry No. 12.

forwarding WWinners' container storage invoices to Hon Hai and/or Foxconn for payment."[33]  CCA has failed to present any evidence that WWinners had a "course of dealing" with CCA pursuant to which WWinners knew or should have known that CCA did not intend to pay WWinners' invoices for storage but, instead, intended only to forward invoices to Hon Hai and/or Foxconn.  See Di Giammatteo, 794 S.W.2d at 104 (agent bears burden of proving that agent disclosed (1) that agent was acting in a representative capacity and (2) the identity of the principal on whose behalf agent was acting); Lacquement, 876 S.W.2d at 939 (issue of disclosure is question of fact).  Accordingly, CCA has failed either to establish that it is entitled to summary judgment or to raise a genuine issue of material fact for trial that it cannot be held liable for the storage charges at issue because it served as the disclosed agent of a known principal.

### (2)  Bills of Lading as Governing Contracts

CCA contends that no contract exists between it and WWinners because

> [t]he contracts that govern this dispute are the CMA CGM S.A. bills of lading issued for each shipment of cargo on behalf of Hon Hai and/or Foxconn.  Though separate bills of lading were issued for each shipment, the terms and conditions of the bills of lading are identical.  The terms and conditions therefore apply to all disputes in this lawsuit.[34]

---

[33] Id. at 6-7.

[34] Id. at 3.

-17-

Asserting that "[f]or each shipment of the containers at issue in this case, CMA CGMA S.A. served as ocean carrier and Hon Hai and/or Foxconn served as shipper and consignee (also referred to as "Merchant" under the bill of lading),"[35] CCA argues that "[p]ursuant to CMA CGM S.A.'s bills of lading, the Merchant, Hon Hai and/or Foxconn, is liable for the container storage charges at issue, not CCA."[36]  As evidence that Hon Hai and/or Foxconn is liable for the container storage charges, CCA cites the terms and conditions of the bills of lading and explains that

> [u]nder each CMA CGM S.A. bill of lading, "Freight" is defined as "all charges payable to the Carrier in accordance with Applicable Tariff and this Bill of Lading, **including storage** and demurrage."  Further, Section 12(4) of each CMA CGM S.A. bill of lading provides as follows:
>
>> (4)  The Merchant shall be responsible for the full payment to the Carrier, its agent, representatives, successors or assignees, of the entire Freight due pursuant to this bill of lading on the agreed date and for its full amount, without possible deduction or set off of any sort. . .[37]

> WWinners responds that
>
> CCA attempts to make a point in their Motion for Summary Judgment at page 6 when quoting from their bill of lading that their customer, the shipper, owes for "storage and demurrage."  That may well be true and their third party actions against Hon Hai and Foxconn may be valid.  That, however, does not lessen or obviate CCA's obligation to

---

[35]<u>Id.</u> at 6.

[36]<u>Id.</u>

[37]<u>Id.</u>

-18-

pay their intermediary railroads, truckers and storage
facilities such as WWinners.[38]

WWinners also points out that each of the bills of lading

attached as Exhibit 1-A to CCA's Motion for Summary
Judgment shows "Houston, TX" [or "Austin, TX"] as the
"Final Place of Delivery*". The * denotes a footnote at
the bottom which states: "APPLICABLE ONLY WHEN THIS
DOCUMENT IS USED AS A COMBINED TRANSPORT BILL OF LADING."
Since the Final-Place-of-Delivery block is filled in,
that confirms that the document is a "combined transport"
bill of lading which, according to CCA's Exhibit 1-B,
includes ship, rail, or road carriage. In addition,
CCA's Exhibit 1-B provides in pertinent part at
paragraph 9:

> 9.   Methods and Routes of Carriage
>
> (1)   The Carrier may at any time and
> without notice to the Merchant,
>
> > (a)   use any means of carriage
> > whatsoever,
> >
> > (b)   transfer the goods from one
> > conveyance to another, including but
> > not limited to transshipping or
> > carrying them on another vessel than
> > that named on the fact hereof,
> >
> >         . . .
> >
> > (e)   load or unload the Goods at any
> > place or port (whether or not such
> > port is named overleaf as a Port of
> > Loading or Port of Discharge) and
> > store the Goods at any such place or
> > port, . . .[39]

CCA has failed to cite any section of the bills of lading that

either requires WWinners to seek payment for the storage at issue

_____

[38]WWinners' Response and Counter Motion for Summary Judgment,
Docket Entry Nos. 20-21, p. 6.

[39]Id. at 5 (quoting Exhibit 1-B attached to Defendant's Motion
for Summary Judgment, Docket Entry No. 12).

from Hon Hai and/or Foxconn, or that makes Hon Hai and/or Foxconn liable to WWinners for that storage.  Paragraph 12 of the terms and conditions pursuant to which the bills of lading were issued provides that the entire freight due pursuant to the bill of lading is payable to the carrier and/or the carrier's agent:

> (4) The Merchant shall be responsible for the full payment **to the Carrier, its agent, representatives, successors or assignees**, of the entire Freight due pursuant to this bill of lading. . .
>
> . . .
>
> (6) **If the Merchant fails to pay the Freight** when due, **he shall be liable to the carrier** for the payment of all freight, demurrage, and other charges . . .[40]

"Freight" is defined to mean "all charges payable to the Carrier in accordance with Applicable Tariff and this Bill of Lading, including storage and demurrage."[41]

Each of the bills of lading that CCA has attached to its motion for summary judgment identifies the "Final Place of Delivery" as Houston, Texas, or Austin, Texas, and contains a footnote explaining that if the "Final-Place-of-Delivery" block is filled in, then the bill of lading is for "combined transport," meaning not just ocean-going transport but also land transport via rail and truck.  In one of the July 28, 2008, e-mails CCA's Pinkava

---

[40]Bill of Lading CMA CGM, Terms and Conditions, Exhibit 1-B attached to Defendant's Motion for Summary Judgment, Docket Entry No. 12, ¶ 12(4) and (6) (emphasis added).

[41]Id. ¶ 1.  See also Defendant's Motion for Summary Judgment, Docket Entry No. 12, p. 6.

told WWinners' Conner that "WW Ro[w]land's will be hol[d]ing loads at their facility prior to delivery to Foxconn."[42]   CCA has not cited any evidence from which a reasonable trier of fact could conclude that once the containers were delivered to WWinners' Houston yard that CCA and/or CMA CGM S.A. had fully performed the carrier's contractual obligation to transport the containers to the Final Place of Delivery identified on the bills of lading.   Thus, even if, as CCA argues, the bills of lading are the documents that govern the dispute in this action, CCA has failed to establish that it is entitled to summary judgment or that there exists a genuine issue of material fact for trial because CCA has failed to cite any section of the bills of lading or the terms and conditions pursuant to which they were issued that allow or require WWinners to seek payment for the storage at issue from Hon Hai and/or Foxconn.

### (3)  Conclusions

For the reasons explained above, the court concludes that  a valid contract exists between CCA and WWinners for storage services, and that CCA has failed to raise a genuine issue of material fact for trial regarding the contention that CCA is not liable to pay the storage charges at issue because it entered the contract as the agent of a disclosed principal, or because the contract that governs the dispute at issue is the bills of lading that the carrier issued for the stored containers.

---

[42]Exhibit A to Bludworth Affidavit at p. 1, Exhibit 1 attached to WWinners' Response and Counter Motion, Docket Entry Nos. 20-21.

(b)  WWinners' Performance

As evidence that WWinners performed its contractual obligations by storing the containers that CCA had delivered to WWinners' Houston yard, WWinners has submitted the affidavit of Hershal Bradley who states that CCA had "29 containers delivered to the yard on July 30, and July 31, 2008[; and t]hereafter, CCA continued to have hundreds of containers delivered to the yard through April 20, 2009."[43]  CCA has not offered any evidence disputing that WWinners performed its obligations under the contract by storing the containers that CCA had delivered to its Houston yard between July 30, 2008, and April 20, 2009.

(c)  CCA's Performance

As evidence that CCA failed to pay for storing the containers that CCA had delivered to WWinners' Houston yard, WWinners submits the affidavit of Jane Arbuthnot who states that "WWinners has furnished CMA CGM (America) LLC storage services totaling $153,861.00 which have not been paid.  Only when WWinners made its demand for payment in May of 2009, did CMA CGM (America) LLC ever claim they did not owe and did not intend to pay the invoices."[44]  CCA has not offered any evidence disputing that after having delivered to WWinners' Houston yard numerous containers for

---

[43]Affidavit of Hershal Bradley, Exhibit 3 attached to WWinners' Response and Cross Motion, Docket Entry Nos. 20-21.

[44]Affidavit of Jane Arbuthnot, Exhibit 4 attached to WWinners' Response and Cross Motion, Docket Entry Nos. 20-21.

storage, and having received not less than 22 invoices for storage fees, and a formal demand for payment from WWinners' counsel, CCA has not paid any of the storage charges at issue.

(d)  WWinners' Damages

As evidence of the damages suffered, WWinners has submitted the Affidavit of Jane Arbuthnot, Chief Financial Officer for the W.W. Rowland group of companies, stating,

> WWinners has furnished CMA CGM (America) LLC storage services totaling $153,861.00 which have not been paid. Only when WWinners made its demand for payment in May of 2009, did CMA CGM (America) LLC ever claim they did not owe and did not intend to pay the invoices.[45]

CCA has not offered any evidence disputing the amount of the storage charges that WWinners seeks to recover, or that despite having received formal demand for payment from WWinners' counsel, CCA has not paid any of the storage charges that WWinners seeks.

3.  <u>Conclusions</u>

For the reasons explained above, the court concludes that the plaintiff, WWinners, has presented evidence in support of each element of its breach of contract claim, and that the defendant, CCA, has failed to present evidence that either establishes its entitlement to summary judgment, or raises a genuine issue of material fact for trial.  Accordingly, WWinners is entitled to summary judgment on its breach of contract claim.

---

[45]<u>Id.</u>

-23-

B.   *Quantum Meruit*

Alternatively, if no express contract exists between the parties, WWinners alleges that it is entitled to recover its outstanding storage charges from CCA on the theory of quantum meruit.  CCA argues that it is entitled to summary judgment on plaintiff's quantum meruit theory of recovery because the container storage for which WWinners seeks payment was performed for the benefit of the shipper, Hon Hai and/or Foxconn, and not for the benefit of CCA.

1.   Applicable Law

Quantum meruit is an equitable theory of recovery based on an implied agreement to pay for benefits received.  Heldenfels Brothers, Inc. v. City of Corpus Christi, 832 S.W.2d 39, 41 (Tex. 1992) (citing Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc., 787 S.W.2d 942, 944 (Tex. 1990)).  While a plaintiff may allege claims for recovery of damages pursuant to both breach of contract and quantum meruit, a plaintiff may not recover for both claims because the two theories of recovery are inconsistent.  Fortune Produce Co. v. Conoco, Inc., 52 S.W.3d 671, 684 (Tex. 2000).  To recover for breach of contract plaintiff must establish the existence of a valid contract; quantum meruit recovery is available only where no valid contract exists.  Id.  Under Texas law the elements of a claim for quantum meruit are: "(1) valuable services were rendered; (2) for the person sought to be charged; (3) which

-24-

were accepted and enjoyed; (4) under circumstances giving reasonable notice that compensation was expected for the services." Infra-Pak (Dallas), Inc. v. Carlson Stapler & Shippers Supply, Inc., 803 F.2d 862, 865 (5th Cir. 1986) (citing Bashara v. Baptist Memorial Hospital System, 685 S.W.2d 307, 310 (Tex. 1985)).  See also Heldenfels Bros., 832 S.W.2d at 41.  "Under this test, quantum meruit recovery is possible for any valuable services rendered." Infra-Pak, 803 F.2d at 865.

2.  Application of the Law to the Facts

Undisputed evidence in the summary judgment record establishes that WWinners (1) rendered valuable storage services (2) at CCA's request (3) for containers that CCA had delivered to WWinners' Houston yard (4) under circumstances giving reasonable notice that WWinners expected to be compensated for its storage services. Asserting that it merely served as an agent for a disclosed principal, CCA contends that it is entitled to summary judgment on WWinners' quantum meruit claim because the storage that WWinners provided was not for CCA's benefit, but for Hon Hai's and/or Foxconn's benefit.[46]  See Vortt, 787 S.W.2d at 944 ("'This remedy is based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted.'") (quoting Truly v. Austin, 744 S.W.2d 934, 936 (Tex. 1988)).  In support of this

---

[46]Defendant's Motion for Summary Judgment, Docket Entry No. 12, pp. 7-8.

contention CCA cites Palmer's statement that "WWinners provided
container storage for the benefit of Hon Hai and/or Foxconn, the
owners and shippers of the containerized cargo at issue, not CCA."[47]
Palmer's statement is not sufficient to establish that CCA is
entitled to summary judgment on WWinners' <u>quantum meruit</u> claim
because it is merely a statement of the legal conclusion that CCA
urges the court to draw, i.e., that the storage service WWinners
provided for the containers at issue did not benefit CCA but,
instead, benefitted Hon Hai and/or Foxconn.

Each of the bills of lading that CCA has attached to its
motion for summary judgement identifies the "Final Place of
Delivery" as Houston, Texas, or Austin, Texas, and contains a
footnote explaining that if the "Final Place of Delivery" block is
filled in, then the bill of lading is for "combined transport,"
meaning not just ocean-going transport, but also land transport via
rail and truck.  In one of the July 28, 2008, e-mails CCA's Pinkava
told WWinners' Conner that "WW Ro[w]land's will be hol[d]ing loads
at their facility prior to delivery to Foxconn."[48]   CCA has not
cited any evidence from which a reasonable trier of fact could
conclude that once the containers were delivered to WWinners'
Houston yard that CCA and/or CMA CGM S.A. had fully performed the

---

[47]Palmer Affidavit, Exhibit 1 attached to Defendant's Motion
for Summary Judgment, Docket Entry No. 12, ¶ 6.

[48]Exhibit A to Bludworth Affidavit at p. 1, Exhibit 1 attached
to WWinners' Response and Counter Motion, Docket Entry Nos. 20-21.

carrier's contractual obligation to transport the containers to the "Final Place of Delivery" identified on the bills of lading. Absent evidence that WWinners' Houston yard was the "Final Place of Delivery" identified on the bills of lading, a reasonable fact-finder could not conclude that the storage WWinners provided the containers did not benefit CCA.  See Jacintoport International, L.P. v. Sealift Inc., 2010 WL 743954, *4-*5 (S.D. Tex. March 1, 2010) (holding that storage at port caused by carrier's delay in transporting cargo to final destination benefitted carrier). Moreover, for the reasons explained in § IV.A.2(a)(1), above, the court has already concluded that CCA has failed to present evidence from which a reasonable fact-finder could conclude that CCA disclosed to WWinners that it was acting as an agent on behalf of a principal, or that CCA identified its principal to WWinners.

    3.  Conclusions

    Because evidence in the summary judgment record undisputedly establishes that WWinners (1) rendered valuable storage services (2) at CCA's request (3) for containers that CCA had delivered to WWinners' Houston yard (4) under circumstances that gave CCA reasonable notice that WWinners expected to be compensated for its storage services, and because CCA has failed to present any evidence from which a reasonable fact-finder could conclude that CCA did not benefit from those storage services, if no valid contract exists between WWinners and CCA, then WWinners is entitled to summary judgment on its quantum meruit claim.

-27-

## V.  <u>Conclusions and Order</u>

For the reasons explained above, Defendant's Motion for Summary Judgment (Docket Entry No. 12) is **DENIED**.  Plaintiff WWinners Container Services, Inc.'s Counter Motion for Summary Judgment (Docket Entry No. 21) is **GRANTED**.

**SIGNED** at Houston, Texas, on this the 17th day of May, 2010.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE